Filed 9/13/21 In re O.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re O.C. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. K.M., Defendant and Appellant. | E076984 (Super.Ct.Nos. J281851 & J281852) OPINION |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Affirmed in part; reversed in part with directions.

Janelle B. Price, by appointment of the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Kaleigh Ragon, Deputy County Counsel, for Plaintiff and Respondent.

1

# I. INTRODUCTION

K.M. (Mother) is the biological mother of O.C. and I.R. In July 2019, the San Bernardino Children and Family Services (the department) filed petitions on behalf of both children, pursuant to Welfare and Institutions Code[1] section 300 et seq., after K.M. left her children in the care of a family friend and was unable to continue caring for them. The department discovered that K.M. was homeless and living out of her car at the time. The children were removed from Mother's custody and, after a contested 12-month review hearing, the juvenile court terminated reunification services and set a hearing to consider the termination of parental rights and the selection of a permanent plan pursuant to section 366.26.

On April 26, 2021, the juvenile court held a contested hearing pursuant to section 366.26. Mother appeared via telephone, indicated she was having "car issues" that morning, and requested permission to either testify telephonically or, in the alternative, that the matter be continued for one day so that she could physically appear to provide testimony. The juvenile court denied both requests, proceeded to summarily deny a petition by Mother seeking to reinstate reunification services pursuant to section 388, and ultimately issued an order terminating Mother's parental rights and selecting a permanent plan of adoption for children. While Mother remained present telephonically for the entire hearing, she was not permitted to testify.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Mother appeals from the April 26, 2021 orders, arguing (1) the juvenile court erred in summarily denying her section 388 petition; (2) the juvenile court abused its discretion in denying her request to testify telephonically or, in the alternative, to grant a one-day continuance to permit her to physically appear to provide testimony; and (3) the juvenile court erred in determining that the parental bond exception to termination of parental rights did not apply based upon the evidence before it at the section 366.26 hearing. We find no error in the juvenile court's summary denial of Mother's section 388 petition. However, we conclude the juvenile court abused its discretion in issuing a combination of orders that had the result of preventing Mother from testifying in violation of her due process right to present evidence at a section 366.26 hearing. We further conclude that such error was not harmless; the order terminating Mother's parental rights must be reversed and the matter must be remanded for a new hearing.

## II. FACTS AND PROCDURAL HISTORY

A. *Dependency, Jurisdiction, and Disposition*

In July 2019, a family friend reported that Mother had left the children in her care; and that she, the friend, had been caring for the children for over a week; Mother had not returned for the children despite the friend's attempts to contact Mother; and Mother's whereabouts were unknown to the friend. The department filed petitions pursuant to section 300 et seq. on behalf of both children, and the children were formally detained following a hearing on July 31, 2019.

On August 30, 2019, the department filed amended dependency petitions on behalf of each child pursuant to section 300, subdivisions (b) and (g). Following a

mediation, the department agreed to revise the allegations of the petition to state that Mother (1) used inappropriate physical discipline, placing the children at risk of physical injury; (2) failed to provide adequate care and support for the children and is unable to arrange a suitable plan for the children's ongoing care; (3) has a substance abuse problem, placing the children at risk; (4) lived an unstable and unsafe lifestyle and has a lack of parenting skills, placing the children at risk of physical harm, abuse or neglect; and (5) had a history of engaging in domestic violence, placing the children at risk of abuse or neglect. At the joint jurisdictional and dispositional hearing, Mother submitted on the petitions as rewritten and waived her right to contest the allegations. The juvenile court sustained the allegations of the petitions and declared both children dependents.

B. *Twelve-month Review Hearing*

In a 12-month review report, the department recommended that the juvenile court terminate Mother's reunification services and set a hearing pursuant to section 366.26 to consider a permanent plan of adoption for both children. While the report acknowledged Mother's ongoing participation in services, it noted that Mother still had not completed the requirements of her case plan, despite having more than a year to do so. The report further acknowledged Mother had participated in visitation,[2] but she missed several visits, and frequently attended late or cut the visits short. Mother objected to the department's recommendations, and the matter was set for a contested hearing.

---

[2] Visitation was conducted virtually from March 20, 2020, onward due to the COVID-19 pandemic.

4

On November 19, 2020, Mother failed to appear when the juvenile court called the matter for a contested 12-month review hearing. Mother's counsel represented that Mother had issues with transportation, which prevented her from appearing on time. Ultimately, Mother was permitted to appear by telephone, but she did not testify. The trial court admitted the department's 12-month review report into evidence and adopted the report's recommendations. Specifically, the juvenile court found that reasonable services had been provided to Mother; Mother failed to complete her court-ordered case plan; Mother had made only minimal progress toward alleviating or mitigating the causes necessitating placement; and it was not substantially probable that the children would be returned to Mother within the statutory time frame. The juvenile court ordered reunification services for Mother terminated, and it set the matter for a hearing to select a permanent plan for the children pursuant to section 366.26.

C. *Permanency Planning Hearing Pursuant to Section 366.26*

The department submitted a report in advance of the section 366.26 hearing, recommending termination of Mother's parental rights and selection and implementation of a permanent plan of adoption for the children. In response, Mother requested the matter be set for a contested hearing and indicated her intent to testify, as well as potentially cross-examine one of the social workers who had contributed to the reports. The parties and the court agreed the social worker need not personally appear but could testify remotely via video conference, if necessary. The juvenile court ordered Mother to be personally present if she intended to testify and admonished Mother that the court would proceed without her if she failed to appear.

On April 26, 2021, the juvenile court held the contested section 366.26 hearing. Mother failed to appear in person, but she appeared telephonically. Her counsel represented that Mother was again having transportation issues and was currently stuck in another county. Mother offered to either testify telephonically or have the matter continued one day so that she could personally appear to testify. The trial court denied both requests and proceeded with the hearing.

The juvenile court noted that, prior to the section 366.26 hearing, Mother submitted a petition pursuant to section 388 requesting reinstatement of reunification services as a result of changed circumstances. In support of her petition, Mother submitted documentation showing she had recently completed a substance abuse treatment program on April 21, 2021. The juvenile court denied the petition, expressing the view that it was "untimely" because it "would require the Court . . . to do further investigation to determine benefit and actual change or substantial change of circumstances . . . ." Additionally, it expressed the view that, "As it is, just a mere completion of a program, doesn't show prima facie and [the] best interest of the child."

With respect to the department's recommendation to terminate parental rights, Mother's counsel objected and requested the juvenile court adopt a permanent plan of legal guardianship, arguing that Mother had participated in visitation and that Mother had a parental bond with the children. The juvenile court found both children generally and specifically adoptable and further found that Mother "failed to meet [her] burden" to establish an exception to the termination of parental rights.

6

## III. DISCUSSION

On appeal, Mother contends the juvenile court's order terminating her parental rights must be reversed because (1) the juvenile court erred in summarily denying her section 388 petition seeking reinstatement of reunification services; (2) the juvenile court erred in denying Mother's request to testify telephonically or, in the alternative, to continue the hearing one day to permit Mother to offer live testimony; and (3) even in the absence of Mother's testimony, the juvenile court erred in terminating Mother's parental rights because Mother met her burden to show the application of the parental bond exception set forth in section 366.26, subdivision (c)(1)(B)(i). We find no error in the juvenile court's order denying Mother's section 388 petition. However, we conclude the juvenile court abused its discretion in issuing orders that had the combined effect of precluding Mother from offering relevant evidence at the time of the section 366.26 hearing. We further conclude that this error was not harmless and requires reversal.

Finally, because we reverse the order terminating Mother's parental rights on this ground and remand for a further hearing, we decline to address Mother's final argument that the juvenile court erred in terminating parental rights based upon the evidence before it at the time of the section 366.26 hearing.

A. *The Juvenile Court Did Not Err in Summarily Denying Mother's Section 388 Petition*

We first address Mother's claim that the trial court erred in denying her an evidentiary hearing on her section 388 petition seeking to reinstate reunification services because " '[a] fair hearing on the section 388 petition [is] a procedural predicate to proceeding to the section 366.26 hearing and disposition.' " (*In re Hunter W.* (2011)

7

200 Cal.App.4th 1454, 1465.) However, we find no error warranting reversal on this ground.

"Section 388 accords a parent the right to petition the juvenile court for modification of any of its orders based upon changed circumstances or new evidence. [Citations.] To obtain the requested modification, the parent must demonstrate both a change of circumstance or new evidence, and that the proposed change is in the best interests of the child. [Citations.] [¶] . . . [¶] To obtain an evidentiary hearing on a section 388 petition, a parent must make a prima facie showing that circumstances have changed since the prior court order, and that the proposed change will be in the best interests of the child." (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.)

Generally, "[a] section 388 petition must be liberally construed in favor of granting a hearing to consider the parent's request," and "[w]e normally review the grant or denial of a section 388 petition for an abuse of discretion." (*In re Alayah J.*, *supra*, 9 Cal.App.5th at p. 478.) This includes situations in which the juvenile court summarily denies the section 388 petition without an evidentiary hearing. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.) Additionally, even where an abuse of discretion is established, reversal is not required absent prejudice resulting in a miscarriage of justice. (*In re Alayah J.*, at pp. 481-482.)

Here, Mother's section 388 petition stated only that she had recently completed a substance abuse program. The petition did not set forth any other facts suggesting a change in circumstances or explain why reinstatement of reunification services would be in the best interest of the children. This failure was fatal to Mother's claim under

8

section 388. The petition must show how a change of order would be in the best interest of the children. Moreover, as multiple Courts of Appeal have recognized, completion of a drug treatment program at a late stage in proceedings, while commendable, is not a substantial change of circumstances within the meaning of section 388. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223; *In re A.S.* (2009) 180 Cal.App.4th 351, 358 [completion of classes and participation in counseling not enough to show changed circumstances where father still unable to "provide the children a stable, safe, permanent placement"].) Thus, the juvenile court did not abuse its discretion in summarily denying Mother's section 388 petition.

Mother's claim that the juvenile court erred in concluding her petition was untimely is not relevant. While the juvenile court's comments did suggest it viewed Mother's petition as "untimely," it also stated the view that, regardless of timeliness, the petition failed to make a prima facie showing of changed circumstances or that the changes would be in the best interest of the children. Thus, even if the juvenile court's view on the timeliness of the petition was erroneous,[3] such a view could not have prejudiced Mother or resulted in a miscarriage of justice where the juvenile court correctly concluded that the petition also failed to make a prima facie case of changed circumstances warranting an evidentiary hearing.

---

[3] Because mother did not complete her substance abuse treatment program until April 21, 2021, the purported change in circumstances occurred only the week prior to the section 366.26 hearing. Thus, it is unclear why the juvenile court believed the petition to be untimely under the circumstances.

9

B. *The Juvenile Court Erred in Issuing Orders that Ultimately Denied Mother's Due Process Right to Present Relevant Evidence at the Section 366.26 Hearing*

Mother also contends the juvenile court erred in denying her request to testify telephonically or, in the alternative, continue the section 366.26 hearing for one day to permit her time to appear in person to testify. We agree that, when taken together, the juvenile court's orders constituted an abuse of discretion because they resulted in a denial of Mother's due process right to present testimony at the section 366.26 hearing. We further conclude that such error was not harmless, requiring reversal and remand for a new hearing.

1. General Legal Principles and Standard of Review

The juvenile court has discretion to permit a party or witness to appear and testify telephonically. (Cal. Rules of Court, rule 5.531(a); *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1176.) Likewise, a juvenile court has the discretion to continue any hearing upon a showing of good cause. (§ 352; *In re D.N.* (2020) 56 Cal.App.5th 741, 756; *In re V.V.* (2010) 188 Cal.App.4th 392, 399.) Where a juvenile court's decision is discretionary, we apply the abuse of discretion standard of review. (See *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315; *In re D.R.* (2010) 185 Cal.App.4th 852, 864.) " ' "Discretion is abused when a decision is arbitrary, capricious or patently absurd and results in a manifest miscarriage of justice." ' " (*In re D.N.*, at p. 756.) " ' "The appropriate test . . . is whether the trial court exceeded the bounds of reason," ' " and " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the

10

reviewing court has no authority to substitute its decision for that of the trial court." ' "

(*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Notwithstanding the discretionary nature of the orders at issue, we cannot ignore the context in which these orders were made. The orders challenged on appeal were made in the context of a contested section 366.26 hearing in which termination of parental rights were at stake. Such a proceeding implicates due process considerations because a parent has a " 'fundamental' and 'commanding' liberty interest in maintaining a parent-child relationship with the child." (*In re William M.W.* (2019) 43 Cal.App.5th 573, 586.) While not entitled to the same level of due process protection afforded a criminal defendant, a parent is still entitled to procedures that " ' " 'comport with fundamental principles of fairness and decency.' " ' " (*Id.* at pp. 587-588.) Thus, in the context of a section 366.26 hearing in which the termination of parental rights is at issue,[4] Courts of Appeal have held that, at a minimum, a parent's right to due process "includes a meaningful opportunity to be heard, present evidence, and confront witnesses." (*In re Grace P.* (2017) 8 Cal.App.5th 605, 612; see *In re James Q.* (2000) 81 Cal.App.4th 255, 265 [At a minimum, due process affords a parent the right to receive notice of a hearing, to present evidence, and to cross-examine adversarial witnesses.]; see *In re Lesly G.* (2008) 162 Cal.App.4th 904, 914-915 [same].)

---

[4] We acknowledge that, in the context of a juvenile dependency proceeding, "[d]*ue process is a flexible concept which depends upon the circumstances and a balancing of various factors.*" (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1120.) Thus " ' "[d]ifferent levels of due process protection apply at different stages of dependency proceedings." ' " (*In re A.G.* (2020) 58 Cal.App.5th 973, 1009.)

It is in this context that the juvenile court's exercise of discretion must be considered. A court's discretion to control the proceedings before it cannot be exercised in a manner that deprives a party of due process. (*People v. Gomez* (2018) 6 Cal.5th 243, 293 [Despite broad discretion to control the conduct of trial, "discretion must be exercised impartially in order to protect defendant's constitutional rights to due process and to a fair trial."]; *In re Matthew P.* (1999) 71 Cal.App.4th 841, 849-851 [court rule granting juvenile court discretion to accept various forms of evidence "is not absolute and does not override due process considerations"].)

Given a parent's due process right to present evidence at a section 366.26 hearing in which termination of parental rights is at issue, an order or combination of orders that operate to deny this fundamental right cannot be made lightly. Absent some countervailing interest at stake, such as the best interest of the dependent child, it is an abuse of discretion to prevent a parent from offering relevant[5] testimony at such a hearing. As we explain, nothing in this case suggests the existence of a countervailing

---

[5] We acknowledge that "the due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court." (*In re J.S.* (2017) 10 Cal.App.5th 1071, 1081.) Thus, for example, the juvenile court may condition any testimony upon an offer of proof without violating a parent's due process right. (See *In re Tamika T.*, *supra*, 97 Cal.App.4th at p. 1122 [no violation of due process to require offer of proof showing the intent to present relevant evidence of significant probative value]; *In re Earl L.* (2004) 121 Cal.App.4th 1050, 1053 [same]; *M.T. v. Superior Court* (2009) 178 Cal.App.4th 1170, 1181 [Courts may require an offer of proof at least on issues where a parent bears the burden of proof.]; *In re A.G.*, *supra*, 58 Cal.App.5th at p. 982 [same].) However, the juvenile court in this case did not request an offer of proof or make any inquiry into the nature of Mother's anticipated testimony prior to denying her request to testify. Nor did any party argue that Mother's testimony would not be relevant to the issues at the hearing. Thus, we cannot conclude the juvenile court's

*[footnote continued on next page]*

12

interest justifying a denial of Mother's request to present testimony at the section 366.26 hearing and, as such, the juvenile court's orders constitute an abuse of discretion.

2. Application

Here, with respect to Mother's request to testify telephonically, Mother was clearly available and capable of doing so. While she was not permitted to testify, Mother was permitted to appear telephonically and remained on the telephone the entire hearing. Telephonic testimony would not have presented any risk of disruption to the proceeding, as the juvenile court and parties were already prepared to examine and receive remote testimony from the social worker.

With respect to Mother's request for a one-day continuance, this was the first request for a continuance of the section 366.26 evidentiary hearing.[6] Further, it was anticipated that the evidentiary hearing would be short, and the juvenile court suggested the matter could easily be held over to the afternoon, suggesting any continuance for one day would also represent a minimal disruption to the juvenile court's calendar. There were no other witnesses physically present who would have to be called back for a continued hearing; no party suggested the matter would run afoul of any statutory deadline if it were continued for one day; and no party suggested that any person necessary to conduct the hearing would not be available the following day. Thus, nothing

---

exercise of discretion was based upon a determination that Mother's anticipated evidence would not be probative to a contested issue in the case.

[6] The section 366.26 hearing was originally set for March 18, 2021, but it was reset to April 26, 2021, for the purpose of conducting an evidentiary hearing.

13

in the record suggests that any competing interests would have been impaired had the juvenile court permitted Mother to testify telephonically or, in the alternative, granted a one-day continuance to permit Mother to arrange for an alternative means of transportation to the court the following morning.

The department concedes that the juvenile court could have permitted Mother to testify telephonically or grant a short continuance, but it argues that Mother failed to present good cause for her requests. However, Mother represented she was unable to appear in person on the date of the hearing because she experienced "car issues" that morning. No parties disputed the veracity of Mother's claim, and the juvenile court acknowledged that Mother's explanation would at least constitute good cause to delay the proceedings for a short time, suggesting it could hold the hearing over until the afternoon.[7] If Mother's explanation constituted sufficient good cause to hold the matter over until the afternoon, we fail to see how that same explanation would not constitute good cause to provide other reasonable alternatives in light of the due process rights implicated in this type of hearing.[8]

---

[7] Indeed, the department also concedes on appeal that "car issues" would justify at least some delay in the proceedings.

[8] We do not suggest that in all cases, such an explanation would be sufficient to warrant good cause. However, there is no indication in the record that Mother harbored an alternative, improper purpose for making her request, such as to unnecessarily delay the proceeding. Mother had been proactive in informing counsel of her difficulties the morning of the hearing. Moreover, Mother's offer to testify telephonically strongly suggests she had no desire to delay the hearing since, if her request had been granted, the hearing would have proceeded as scheduled.

14

The department also argues the juvenile court might have denied Mother's request to testify telephonically due to concerns over the ability to properly assess Mother's credibility. It is true that live witness testimony in the presence of the trier of fact can be extremely valuable in assessing a witness's credibility. (See *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1358 (*Elkins*); *In re Clifton V.* (2001) 93 Cal.App.4th 1400, 1404-1405.) However, nothing in the record suggests the juvenile court was concerned with the ability to properly assess witness credibility in denying Mother's request.[9] The juvenile court's willingness to accept remote testimony from the only other key witness suggests this was not a concern. Nevertheless, to the extent the juvenile court may have been concerned with its ability to properly assess Mother's credibility, this would not provide justification for denial of Mother's request to continue the matter for one day so that she could physically appear to testify.

The department's suggestion that the juvenile court could have denied Mother's requests because Mother had previously experienced "car issues" necessitating appearance by telephone on prior occasions is also unavailing. Even if we were to

_____

[9] We assume for the sake of argument that this could have been a proper basis for denying Mother's request. However, we note that *Elkins*, *supra*, 41 Cal.4th at page 1357, stands for the proposition that the party seeking to present live testimony has a right to do so. In line with this rationale, a party may also waive this right and consent to an alternative procedure for the presentation of evidence. (See *In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1129-1131 [holding the right to present live testimony may be waived, distinguishing situations in which a party consents to alternative procedures for the presentation of evidence from a trial court's order limiting receipt of live testimony].) Thus, we question whether this principle can be extended to permit the trial court to fashion rules that compel a party to present evidence only in a form preferred by the court at the risk of sacrificing the right to present any evidence at all.

construe such behavior as some type of misconduct,[10] such misconduct would not justify preventing Mother from testifying at the section 366.26 hearing. While a "cavalier disregard for the obligation to appear threatens the child's interest in the prompt resolution of placement issues and the court's need to efficiently dispose of large dependency calendars," "[a]ny judicial response to such misconduct is . . . limited by the obligation to protect the important procedural rights involved," and "[j]uvenile courts may not deprive a parent of her or his procedural due process rights simply because the parent failed to appear." (*In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1130 [juvenile court abused its discretion in imposing evidence sanction preventing father from testifying in response to multiple failures by father to appear at prior hearings]; see *In re Nemis M.* (1996) 50 Cal.App.4th 1344, 1352 ["[C]onsequences of a parent's failure to appear at a scheduled hearing . . . do not include the deprivation of the due process right to confront and cross-examine witnesses" or "a limitation on the parent's right to present witnesses."].)

Finally, the department's suggestion that a continuance of one day would have been contrary to the best interests of the children is simply unsupported by anything in

---

[10] We do not believe the record is adequate for us to draw the inference suggested by the department with respect to Mother's prior requests to appear by telephone. According to the department's own reports, Mother was homeless during much of the relevant time period and lived in shelters, a hotel, and her car. The department acknowledged that Mother resided in Los Angeles County and acknowledged the distance presented a barrier for her to be physically present in San Bernardino County. At some point prior to the section 366.26 hearing, Mother also began working a part-time job. In this context, it does not appear especially unusual for Mother to have difficulty making personal appearances or arranging for transportation.

16

the record.  A continuance is not contrary to a child's best interest where it does not undermine the prompt resolution of the child's custody status, deprive the child of a stable environment, or prolong the child's temporary placement.  (See *In re D.N.*, *supra*, 56 Cal.App.5th at p. 768.)  While, in a strict sense, even a delay of one day prolongs the temporary placement of Mother's children, it is difficult to imagine how such a delay would have had any practical impact on the ultimate resolution of the dependency case.  Certainly, nothing specific to this case suggests that a delay of one day would have made any material difference in the selection and implementation of a permanent plan for the children.

While each evidentiary and procedural ruling remains discretionary, the proper exercise of discretion must balance a parent's due process rights with any competing interests presented by the facts of each case.  Where no such competing interest exists, an order or combination of orders, which operate to deprive a parent of his or her due process rights, is an abuse of discretion.  Thus, we conclude the juvenile court erred when it denied Mother's request to testify telephonically or, in the alternative, denied a one-day continuance to permit Mother to physically appear to testify.

C.  *The Denial of Mother's Due Process Right Was Not Harmless*

The department contends that, even if the juvenile court abused its discretion in preventing Mother from testifying at the section 366.26 hearing, any such error was harmless.  We disagree.

Generally, "the harmless error analysis applies in juvenile dependency proceedings even where the error is of constitutional dimension."  (*In re J.P.* (2017)

17

15 Cal.App.5th 789, 798.) However, the precise standard to determine whether an error was harmless remains unsettled. "[S]ome Courts of Appeal have applied a *Chapman*[11] 'harmless beyond a reasonable doubt' standard," while other courts "have embraced the *Watson*[12] more probable than not standard." (*In re Christopher L.* (2020) 56 Cal.App.5th 1172, 1188, review granted Feb. 17, 2021, S265910.) "*Watson* requires a 'reasonable probability of a more favorable outcome,' absent the challenged errors, in order for an error to warrant reversal. [Citations.] Under *Chapman*, by contrast, 'the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' " (*Ibid.*) We need not resolve this question here because we believe that the deprivation of Mother's due process right to testify in this case cannot be considered harmless under either standard.

Here, Mother's counsel specifically argued for consideration of the parental bond exception[13] to the termination of parental rights at the section 366.26 hearing. The department's reports indicated that Mother had regularly participated in visitation

---

[11] *Chapman v. California* (1967) 386 U.S. 18.

[12] *People v. Watson* (1956) 46 Cal.2d 818.

[13] The parental bond exception is a statutory exception to the preference for termination of parental rights and selection of a permanent plan of adoption and "applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; see § 366.26, subd. (c)(1)(B)(i).)

18

throughout the dependency proceedings,[14] and at least one social worker commented, "It cannot be disregarded that the mother has a strong, evident bond with her children." However, this was an issue upon which Mother bore the burden of proof (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 953-954) and, ultimately, the juvenile court determined Mother failed to meet her burden and failed to offer affirmative evidence in support of the parental bond exception. Thus, the record suggests that the addition of Mother's testimony may very well have made a difference in meeting her burden on this issue.

This court found prejudicial error in a substantially similar circumstance in *In re J.S.* (2017) 10 Cal.App.5th 1071. In that case, we considered whether the juvenile court's error in refusing to permit a mother to testify with respect to a potential sibling bond exception to termination of parental rights was harmless under the "reasonable doubt" standard of prejudice. (*Id.* at pp. 1080-1081.) We concluded that such an error "cannot be deemed harmless" because the absence of the excluded testimony left us without a record to determine what the degree of any relevant bond may have been or the credibility the juvenile court might have given to the mother's testimony on that issue. (*Id.* at p. 1081.) Likewise, the Court of Appeal in *In re Clifton V.*, *supra*, 93 Cal.App.4th 1400, reached a similar decision upon concluding the juvenile court erred in precluding a mother's testimony, reasoning that, because the appellate court cannot determine what testimony would have been offered, error in preventing a mother from testifying cannot

---

**14** While Mother did not appear at every visit, and some visitations were interrupted or cut short, the record suggests that the onset of the COVID-19 pandemic created significant barriers to visitation and, at least some of these disruptions were caused by the children's caretaker and not mother.

19

be deemed harmless regardless of whether the " 'harmless beyond a reasonable doubt,' " or more lenient " 'reasonable probability,' " standard is applied. (*Id.* at p. 1406.)

The department's argument that the error must be deemed harmless because Mother still had not completed her reunification case plan and had not maintained a stable and safe living situation misses the point. "Nothing that happens at the section 366.26 hearing allows the child to return to live with the parent. [Citation.] Accordingly, courts should not look to whether the parent can provide a home for the child; the question is just whether losing the relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home. . . . Even where it may never make sense to permit the child to live with the parent, termination may be detrimental." (*In re Caden C.* (2021) 11 Cal.5th 614, 634.) Thus, Mother's inability to care for her children was not relevant to the issue before the juvenile court at the time of the section 366.26 hearing. Reunification services had already been terminated, and the evidence on that issue does not bear upon Mother's ability or inability to establish the application of the parental bond exception.

Because we cannot conclude the error in this case was harmless, we must reverse the juvenile court's order terminating parental rights and remand the matter for an evidentiary hearing that permits Mother a reasonable opportunity to present evidence and testimony on her own behalf to determine whether a statutory exception to termination of her parental rights exists. Further, because we reverse the order on this ground, we need not consider Mother's remaining argument that the trial court erred when it found the

20

parental bond exception to termination of her parental rights did not apply based upon the evidence before it.

## IV.  DISPOSITION

The order terminating Mother's parental rights is reversed, and the matter is remanded for a limited evidentiary hearing on the issue of the applicability of the parental bond exception set forth in section 366.26, subdivision (c)(1)(B)(i).  Mother should be given a reasonable opportunity to present testimony at the time of such a hearing.  The juvenile court shall then make a determination regarding whether the parental bond exception overrides the legislative preference for adoption.

In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:


RAMIREZ _____
P. J.


McKINSTER _____
J.

21